UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OUTLAW PERFORMANCE BOATS, LLP, et al.,

     Plaintiff,

                              Case No. 2:21-11961
                              HON. GERSHWIN A. DRAIN

vs.

BROWN AND BROWN OF FLORIDA, INC. et al.,

     Defendants.

_____/

**OPINION AND ORDER: (1) DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 37]; (2) GRANTING BOTH PLAINTIFF'S AND DEFENDANTS' MOTIONS FOR LEAVE TO FILE SUPPLEMENTAL BRIEFING [ECF NOS. 45 AND 47]; and (3) SETTING DATES**

## I. INTRODUCTION

On August 24, 2021, Plantiffs Outlaw Performance Boats LLP ("Outlaw"), Outlaw owner Larry Lalewicz ("Larry") and Leslie Gillis ("Leslie") filed a First Amended Complaint. It named insurance company Brown & Brown of Florida Inc., ("Brown & Brown") and insurance agent Reed Hendrix ("Hendrix") as Defendants.

The complaint alleges four counts: Breach of Contract (Count I), Breach of Fiduciary Duty (Count II), Negligence (Count III) against Defendant Hendrix only, and Respondeat Superior (Count IV) against Defendant Brown and Brown only.

Before the Court is Defendants' motion for summary judgment on all counts, filed on October 26, 2022. [ECF No. 37] Plaintiffs responded on October 27, 2022. [ECF No. 39]. Defendants replied on November 3, 2022. [ECF No. 40]. Both parties also filed motions for leave to file supplemental briefing with the briefs attached. [ECF Nos. 45 and 47]. Those motions for leave are **GRANTED**. The motion for summary judgment is fully briefed and the Court heard oral argument on January 27, 2023.

For the reasons stated below, Defendants' motion for summary judgment is **GRANTED** with respect to Count I (Breach of Contract) and **DENIED** with respect to **Counts (II-IV)**.

## II. Factual Background

Plaintiffs say they engaged Brown & Brown and its employee Hendrix to act as their agent and provide them a quote for a "full coverage" insurance policy for their custom 2019 Outlaw Catamaran charter fishing vessel ("Vessel"). Although Plaintiff did eventually secure an insurance policy with the help of Hendrix and other staff at Brown and Brown, the company was not the insurer of the Vessel.

The insuring company's name was Yachtinsure. Plaintiffs do not bring any claims against Yachtinsure in this case.

The facts relevant to this motion pertain to whether Hendrix contracted with Plaintiffs to advise and connect them with an insurer that would cover the vessel while in the waters and trailer, as well as during transportation between states, and whether that purported agreement was breached due to Hendrix's alleged negligence.

Larry contacted Hendrix in an email on December 11, 2019. He informed Hendrix that he wanted help getting an insurance policy to cover his charter captain and boat. [ECF No. 39-2, PageID.435]. Hendrix is alleged to have said, "I grew up charter fishing and commercial fishing and I now specialize in insurance for these types of risk . . . I insure a ton of Freeman boats and your Outlaw Vessels are very similar." [Id]. Plaintiffs replied, "[w]e are new to this and any help on getting this new charter captain and boat covered, would be great!" [Id]. On December 16, 2019, Hendrix requested a survey or "spec sheet" of the Vessel because "it is a custom build and one of a kind," and the insurance carriers wanted more information. [ECF No. 39-2, PageID.432]. Plaintiffs sent Hendrix a survey of the boat.

As part of the discussions with Hendrix, Larry says he specifically informed Hendrix that he "intended to trailer" the Vessel between Michigan and Louisiana and inquired into whether the policy would cover such "transportation." [ECF No. 39-3, PageID.442]. On December 20, 2019, Hendrix sent Plaintiffs an email stating: "The policy I provided covers the vessel while on the trailer and getting service and all. It also covers for hurricane and named storm damages. When do you anticipate the vessel to be in Louisiana?" [ECF No. 39-4, PageID.445].

On January 7, 2020, Plaintiffs were allegedly sent the completed proposal for insurance from Hendrix along with a quote from Aspen American Insurance Company and Yachtinsure Limited.

On January 15, 2020, Larry executed an application for insurance to Brown & Brown. He claims Hendrix prepared the application for him. The application stated that the main mooring for the vessel was at Cypress Cove Marina in Venice, Louisiana, with navigational requirements identified as the "Waters of Gulf of Mexico (excluding Cuba) not exceeding 250 miles offshore." [ECF No. 37-2, PageID.332]. And it stated that the vessel would not be "laid up[.]" [Id].

On January 27, 2020, Robyn Aizprua, Marine Account Manager for Brown & Brown, sent Larry and Leslie a copy of the binder for insurance. Also on January 27, 2020, Ms. Aizprua sent Larry and Leslie a copy of the yacht policy

Declaration and stated in her correspondence "If you are not in agreement with the Marine Insurance Confirmation[,] please contact our office immediately so that we may discuss this matter further and amend your coverage accordingly." The same day, Larry sent to Defendants an email stating that they "need to change the declaration page to Larry Lalewicz[,]"—instead of both Larry and Leslie—as the beneficial owner of the vessel.

Plaintiffs were subsequently issued a yacht policy with Yachtinsure, Ltd., policy number ASU00804500, effective February 1, 2020. On February 3, 2020, Ms. Aizprua forwarded a copy of the binder of insurance with Endorsement 1, which amended the policy as Mr. Lalewicz requested.

On February 24, 2020, Emily Williams, Marketing Assistant for Brown & Brown, sent a copy of the policy to Larry and in her email, requested that he "Please take a moment to confirm all the information listed is correct. It is most important that you review the policy and fully understand the coverage[]s, limits and exclusions." The policy stated that:

> coverage will not apply during any period in which your yacht and/or vessel . . . are outside of the named navigational territory as shown on the Declaration unless prior written consent and agreement has been obtained by us. Please be aware that an Additional Premium may become payable for this extension of coverage.

[ECF No. 47-4, PageID.558].

On January 12, 2021, while stored on its trailer in Michigan, Plaintiffs' boat caught fire, destroying the Vessel and causing over $400,000.00 in losses to Plaintiffs, according to a fire department report. [ECF No. 39-5, PageID.447]. Plaintiffs submitted a proof of claim to their insurance carrier, Yachtinsure, for this loss. On January 26, 2021, Plaintiffs received a Reservation of Rights letter, denying coverage for the loss because, it was damaged while on the trailer outside of navigational limits. [ECF No. 39-6, PageID.451].

Plaintiffs say they contacted Hendrix at Brown & Brown seeking an explanation as to why the claim was denied and why the policy Hendrix procured did not cover the loss, and "why Hendrix failed to obtain the insurance he promised to provide." [ECF No. 39, PageID.416]. Plaintiffs say neither Hendrix nor Brown & Brown responded to that request. [Id]

## III.   Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a*); Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  No genuine dispute of material fact exists where the record "taken as

a whole could not lead a rational trier of fact to find for the non-moving party."
*Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"Of course, [the moving party] always bears the initial responsibility of
informing the district court of the basis for its motion, and identifying those
portions of 'the pleadings, depositions, answers to interrogatories, and admissions
on file, together with the affidavits, if any,' which it believes demonstrate the
absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The party
opposing summary judgment must show that she/he can make good on the promise
of the pleadings by laying out enough evidence that will be admissible at trial to
demonstrate that a genuine issue on a material fact exists, and that a trial is
necessary. *Bard v. Brown Cnty., Ohio*, 970 F.3d 738 (6th Cir. 2020).

Ultimately, the court evaluates "whether the evidence presents a sufficient
disagreement to require submission to a jury or whether it is so one-sided that one
party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
242, 251–52 (1986). In doing so, the Court "draw[s] all reasonable inferences and
view[s] the evidence in the light most favorable to the [nonmovant]" to determine
whether a genuine dispute of material fact exists. *Henschel v. Clare Cty. Rd.
Comm'n*, 737 F.3d 1017, 1022 (6th Cir. 2013).

## B. Count I:  Breach of Contract

Plaintiffs allege that they formed a contract with Hendrix to secure adequate insurance coverage, including coverage for when the boat was on its trailer in Michigan.

To prevail on a claim for breach of contract, the plaintiff must establish by a preponderance of the evidence that (1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach. *Bank of Am., NA v. First Am. Title Ins. Co*., 499 Mich. 74, 878 N.W.2d 816 (2016).

A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration (i.e., a bargained for exchange), (4) mutuality of agreement, and (5) mutuality of obligation.  *AFT Mich. v. Michigan*, 497 Mich. 197, 235, 866 N.W.2d 782 (2015). "Unless an acceptance is unambiguous and in strict conformance with the offer, no contract is formed." *Kloian v. Domino's Pizza*, LLC, 733 N.W.2d 766, 770 (Mich. App. 2006) (citations omitted). "Mere discussions and negotiations, including unaccepted offers, cannot be substitute for formal requirements of a contract." *Kamalnath v. Mercy Mem'l Hosp. Corp*., 194 Mich. App. 543, 487 N.W.2d 499 (1992)

Defendants argue that no contractual relationship existed between Plaintiffs and Defendants. They say there is no writing to reflect a contract between Plaintiffs and Defendants, or any applicable terms thereto. In Defendants' view, "Plaintiffs appear to allege in their Complaint an offer, but to which no acceptance or counter proposal was made." [ECF No. 37, PageID.324]. Defendants believe the communications between Larry and Hendrix before the application was filed and policy became effective are "mere negotiations and discussions." [Id].

Plaintiffs argue that they entered into an implied contract with Defendants. Plaintiffs say they asked Hendrix to assist them in securing the appropriate insurance coverage for their Vessel, and Defendants, by performing that service and securing coverage, "albeit deficient coverage," accepted Plaintiffs' offer, and procured a policy for Plaintiffs, and Defendants received a commission. As such, the argument goes, all elements of a valid contract have been met. [ECF No. 39, PageID.418].

Plaintiffs rely on *Vutci v. Indianapolis Life Ins. Co*., 157 Mich. App. 429, 403 (1987). In that case the Michigan Court of Appeals concluded that the estate of the insured person adequately stated a claim that the insurance agent breached the implied contract to provide insured with proper advice concerning life insurance coverage. *Id*. The agent allegedly persuaded the insured party to cancel a valid life insurance policy and replace it with a new life insurance policy by lying to the

insurance company about his health risks. *Id*. at 445. The new policy was voided because of the insured's misrepresentations. *Id*.

The agent in *Vutci* convinced a client to lie on an insurance application in order to get different coverage, which ultimately led to that policy being voided. That case is clearly distinguishable from what Hendrix did.

Viewing the facts in the light most favorable to Plaintiffs, they requested a quote for full coverage on their boat and informed Hendrix that they would need to transport the boat between Michigan and Louisiana. Hendrix provided them a quote and stated that the quoted policies provided coverage while the boat was on the trailer. Hendrix did not inform them of the fact that such desired coverage was contingent on Plaintiffs obtaining consent from the carrier. And Plaintiffs made no attempt to obtain consent because they were unaware that they need to do so. In fact, the application Larry signed explicitly prohibited the boat from being "laid up" and prescribed navigational limits that did not include a trailer in Michigan. Plaintiffs applied for the policies and began paying the premiums anyway. And Defendants received a commission from the sale of this deficient insurance policy.

Hendrix made assurances—before the application was filed—that the policy covered the boat while on the trailer; these were just assurances and statements of belief, not binding promises that form a contract between the two parties. *See*

*Zaremba Equip., Inc*. 280 Mich. App. at 42. (Holding that an insurance broker's alleged representations that plaintiff had "full coverage" or "replacement cost coverage" were not promises, but "words of assurance or statements of belief....") and *citing State Bank of Standish v. Curry*, 442 Mich. 76, 90, 500 N.W.2d 104, 110 (1993). This became even more evident when Hendrix advised them to apply for a policy that did not comport with his earlier assurances.

Although the Michigan Supreme Court has described "the relationship between the insurer and insured" as "a contractual one," *Harts v. Farmers Ins. Exch*., 461 Mich. 1, 7, 597 N.W.2d 47 (1999), it has not held that the provision of negligent advice or the negligent procurement of insurance may support a claim for breach of contract. *Stephens v. Worden Ins. Agency*, LLC, 307 Mich. App. 220, 229, 859 N.W.2d 723, 729 (2014). Rather, Michigan courts have characterized an insurance agent's failure to procure requested insurance as a tort. *Holton v. A+ Ins. Assoc., Inc*., 255 Mich.App. 318, 324–325, 661 N.W.2d 248 (2003). *See also Zaremba Equip., Inc*., 280 Mich.App. at 37–38 (holding that an insurance agent who does not procure the insurance coverage requested breaches his or her duty, suggesting a negligence claim). Plaintiff did not have a contract with Hendrix, Michigan courts construe such a relationship as a duty sounding in tort and agency.

In this case, the purported promise to procure insurance likely did not exist, if at all, until the application was executed. Further, Hendrix did not receive his

commission—i.e. his end of the bargained for exchange—until after the Plaintiffs were furnished with the insurance for which they applied. This means that Plaintiffs' offer to Hendrix of a commission in exchange for a quote for "full coverage" went unaccepted. Hendrix's assurances that the policy covered the boat while on the trailer were not promises. A contract to procure insurance in exchange for a commission may have formed when Plaintiffs executed the insurance application. And this purported contract was not breached because they were provided the insurance for which they applied.

For these reasons, Defendants' motion with respect to Count I is **GRANTED**.

### C. Count's II and III:   Breach of Fiduciary Duty and Negligence Against Hendrix

Counts II and III are both premised on Hendrix's allegedly inaccurate representations concerning the sufficiency of the insurance coverage quoted to Plaintiffs. Defendants say there was no special relationship between Plaintiffs and Defendants and therefore Hendrix owed no duty under *Harts v. Farmers Ins. Exch.*, 461 Mich. 1, 8, 597 N.W.2d 47 (1999).

### 1.  Whether there was a Special Relationship

"[A]n insurance agent whose principal is the insurance company owes no duty to advise a potential insured about any coverage" because the agent's job is to

present the product of the principal and take orders. *Council v. Allstate Vehicle & Prop. Ins. Co.*, 2021 WL 646827, at \*5 (Mich. Ct. App. Feb. 18, 2021) (*citing Harts,* 461 Mich. at 8. However, "when an event occurs that alters the nature of the relationship between the agent and the insured," the agent can create a special relationship that imposes a duty on the part of the agent to advise the insured about coverage. *Harts,* 597 N.W.2d at 47.

The Michigan Supreme Court recognized in *Harts* four situations in which an agent could create a special relationship with the insured: (1) the agent misrepresents the nature or extent of the coverage offered or provided, (2) an ambiguous request is made that requires a clarification, (3) an inquiry is made that may require advice and the agent, though he need not, gives advice that is inaccurate, or (4) the agent assumes an additional duty by either express agreement with or promise to the insured, then an agent assumes a duty to advise the insured regarding the adequacy of insurance coverage. *Harts,* 461 Mich. 1, 597 N.W.2d 47.

In *Auto Crafters, L.L.C. v. Al Bourdeau Ins. Serv., Inc*., 2006 WL 397964, at \*1 (Mich. Ct. App. Feb. 21, 2006), the Michigan Court of Appeals held that an insurance agent owed a duty of care to insured because, Plaintiff and the insurance agent agreed that the policy would cover $36,000 in replacement value for insured's truck and the insured purchased a specific auto insurance policy because he believed it would pay $36,000 if the truck was totaled. *Id*. The court ruled in

this way even though the insured admitted that the agent never directly told him that the policy would pay $36,000 if the truck was totaled. *Id*.

In *Pressey Enterprises, Inc. v. Barnett-France Ins. Agency*, 271 Mich. App. 685, 724 N.W.2d 503 (2006), the Michigan Court of Appeals ruled that an insurance agent did not owe a duty to insured. The insurance agent's statement that she would switch insured hotel owners' policy from builder's risk policy to full business/commercial policy once owners began furnishing hotel and had an opening date was not misrepresentation of coverage offered and did not create duty on part of agent to obtain coverage. *Id*. Although agent had not switched policies at time of fire despite fact that hotel was furnished and had an opening date, owners never called the agent to confirm such information and the *Harts* factors were not met. *Id*.

Similar to *Auto Crafters, L.L.C* and distinct from *Pressey*, Hendrix owed Plaintiffs a duty. Plaintiffs say Larry informed Hendrix that he would be transporting the boat by trailer between Michigan and Louisiana and asked whether it would be covered. Hendrix never specifically informed Larry that the policy would cover the boat while being transported between Michigan and Louisiana. But there can be no genuine dispute that Hendrix sent Plaintiffs an email stating: "The policy I provided covers the vessel while on the trailer and getting service and all. It also covers for hurricane and named storm damages. . ." [ECF No. 39-4,

PageID.445]. He sent this email even though the statement contained therein would only be true if Plaintiffs obtained consent from Yachtinsure and potentially paid an additional premium. Larry testified that Plaintiffs were not aware of the need to obtain consent from Yachtinsure before moving the boat from Louisiana to Michigan. [ECF No. 47-3, PageID.543].

Hendrix did not simply procure a product; he held himself out as a specialist and offered advice as to the adequacy of coverage provided compared to Plaintiffs' needs. The insurance policy Larry ultimately applied for—pursuant to the advice of Hendrix—only included coverage for damage to the vessel outside of navigational limits on the condition that prior written consent was obtained before travel and a potential additional premium was paid. [ECF No. 47-4, PageID.558]. Viewing the facts in the light most favorable to the Plaintiffs the Defendants failed to specifically inform Plaintiffs of the need to seek consent and pay an additional premium before the desired coverage would be furnished. Thus, a reasonable jury could conclude that Hendrix either misrepresented the nature of the policy provided or he gave inaccurate advice. Under *Harts*, Hendrix owed Plaintiffs a duty.

Brown and Brown provided Plaintiffs an insurance binder, a copy of the policy, and asked Larry to review it for corrections or potential amendments. They requested no amendments that are material to this case. Contrary to Defendants'

argument, this does not show that Hendrix did not owe Plaintiffs a duty and the fact that Larry filed an application for a deficient policy does not entitle Defendants to summary judgment.

*Zaremba I* illustrates this point, there, the plaintiff alleged negligence against the insurance agent on the basis that the agent failed to obtain the requested coverage or accurately represent the coverage obtained in the renewal policy. *Zaremba Equip*, 280 Mich. App. at 20-21. Based on discussions with the insurance agent, the insured purchased a policy that he believed would cover the replacement costs of his property, but a fire destroyed the property, and the policy was not sufficient to cover the replacement costs. *Id*. The jury found in favor of the plaintiff. *Id*. Significantly, although *Zaremba* acknowledged an insured's duty to read the policy, the court did not hold that the insured's failure to do so was dispositive of the tort claim against the agent. *Id*. Rather, it held that the insured's failure to read the insurance application and related documents was relevant to comparative negligence, and that the jury could reasonably determine that it was the proximate cause of the insured's damages. *See id*. at 34-35, 761 N.W.2d 151.

Further, in *Holman*, the Michigan Court of Appeals ruled that an insured's failure to identify a misrepresentation in the insurance application allegedly made by the insurance agent should not preclude a negligence action, but it may be considered by a jury when determining comparative fault and proximate cause.

*Holman v. Farm Bureau Gen. Ins. Co. of Michigan*, 2022 WL 3129797, at *5 (Mich. Ct. App. Aug. 4, 2022).

Similarly, Plaintiffs' failure to understand the terms of the application and insurance policy as inconsistent with the assurances provided by Hendrix does not entitle Defendants to summary judgment on Plaintiffs' breach of fiduciary duty and negligence claims. These facts are relevant to the allocation of fault for Plaintiffs' decision. There is a genuine issue of material fact regarding whether Hendrix exercised reasonable care when he advised Plaintiffs that the insurance policy would cover the boat while on the trailer outside of the navigational limits and advised him—without informing him of the specific exceptions—to apply for an insurance policy that did not provide such coverage unless consent was first obtained.

### 2. A Reasonable Jury Could Conclude that Hendrix Was Negligent and Breached His Duty of Care

"[W]hen an insurance agent elects to provide advice regarding coverage and policy limits, the agent owes a duty to exercise reasonable care [and the] insured has a duty to read its insurance policy and to question the agent if concerns about coverage emerge." *Zaremba Equip*, 280 Mich. App. at 36. "[T]he law applied in Michigan leaves no room to doubt that as a general rule, an insured must read his or her insurance policy." *Id*. at 29. "[Michigan] court[s] ha[ve] many times held

that one who signs a contract will not be heard to say, when enforcement is sought, that he did not read it, or that he supposed it was different in its terms." *Id*.

"To establish a prima facie case of negligence, a plaintiff must prove the following elements: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Highfield Beach at Lake Michigan v. Sanderson*, 331 Mich. App. 636, 666, 954 N.W.2d 231, 247 (2020).

In *Zaremba Equip., Inc. v. Harco Nat. Ins. Co.*, 302 Mich. App. 7, 16 (2013) ("*Zaremba II*"), an insurance agent who held himself out as an expert who could advise insured company as to the proper coverage for a company's business premises assumed a duty to provide such proper coverage as was requested. *Id*. The agent, claiming expertise, specifically made recommendations as to what the company needed in terms of commercial insurance to be fully insured, agent agreed to "meet or beat" competitor's offer for coverage of "guaranteed replacement cost," agent undertook a "survey" of building by touring facility and taking measurements and photographs. *Id*. And the agent misrepresented the nature and extent of coverage in assuring company that it was insured for full replacement coverage in the event of a total loss. *Id*. The court rejected the argument that failure

to read the policy precluded plaintiff's negligence claims and upheld the jury verdict in favor of plaintiff's negligence claim. *Id.*

Hendrix held himself out as a specialist and reviewed a survey of the vessel. He proffered advice to Plaintiffs, so he owed a duty of reasonable care. There is a genuine issue of material fact as to whether Hendrix acted reasonably in giving incomplete advice and advising Plaintiffs to apply for the policy even though it did not cover damage to the vessel while outside of the navigational limits unless consent was first obtained, and an additional premium was potentially paid. Defendants asserted at oral argument that Defendants sent Plaintiffs a letter on January 7, 2020 that specifically informed Plaintiff of the need to seek consent. But because Larry testified that Defendants did not inform Plaintiffs of this need, a genuine issue of material fact exists as to whether such a communication occurred.

The jury must decide whether Hendrix was negligent, and shares blames for Larry's decision to apply for the policy. This is true even though, Plaintiffs presumably understood and agreed to the terms in the application and overall policy. "An insured's duty to read insurance policy documents does not preclude a negligence action against the insurance agent." *Holman v. Farm Bureau Gen. Ins. Co. of Michigan*, 2022 WL 3129797 (Mich. App. 2022).

### 3. A Reasonable Jury Could Conclude that Hendrix Breached His Fiduciary Duty

A "fiduciary relationship" is a relationship in which one person is under a duty to act for the benefit of the other on matters within the scope of the relationship and fiduciary relationships usually arise in one of four situations: (1) when one person places trust in the faithful integrity of another, who as a result gains superiority or influence over the first; (2) when one person assumes control and responsibility over another; (3) when one person has a duty to act for or give advice to another on matters falling within the scope of the relationship; or (4) when there is a specific relationship that has traditionally been recognized as involving fiduciary duties, as with a lawyer and a client or a stockbroker and a customer. *Calhoun Cnty. v. Blue Cross Blue Shield Michigan*, 297 Mich. App. 1, 824 N.W.2d 202 (2012).

Hendrix was an independent insurance agent who provided Plaintiffs with advice and owed a duty under *Harts*. Therefore, he falls into the third category as a person who had a duty to act for or give advice to another on matters falling within the scope of their insurance agent-client relationship. Hendrix owed a fiduciary duty.

In this case, Plaintiffs have alleged that Defendants, as their agents, breached their fiduciary duty by:

a. negligently representing that the policy procured for Plaintiffs met their needs, and specifically that the Policy covered the yacht while being trailered, transported to, and/or repaired in the state of Michigan;

b. failing to accurately prepare the insurance application to procure the proper insurance;

c. failing to advise Plaintiffs concerning the adequacy or scope of coverage being applied for; and,

d. failing to exercise reasonable skill and ordinary diligence, as required in the insurance industry, by failing to obtain the appropriate insurance to cover the loss.

[ECF No. 39, PageID.423].

It is disputed whether Defendants informed Plaintiffs that Hendrix's assurance regarding the policy's coverage of the boat while on the trailer was contingent on Plaintiffs obtaining prior written consent from the carrier. Hendrix held himself out as a specialist in procuring marine insurance, Plaintiffs allegedly advised Hendrix that they were "new" to this type of insurance and were relying on him to provide insurance to fully cover the Vessel. Plaintiffs allegedly asked Hendrix to explain the extent of coverage if the Vessel was to be transported, stored and/or serviced; and Hendrix responded that the policy covered "the vessel while on the trailer and getting service and all" presumably without describing any exceptions. There is a genuine issue of material fact regarding whether these circumstances show that Hendrix breached his fiduciary duty to Plaintiffs.

Summary judgment is **DENIED** with respect to Counts II and III.

## D. Count IV: Respondeat Superior

Plaintiffs make a claim for vicarious liability. Arguing that Defendants Brown and Brown can be held liable for any negligent advice Hendrix gave that caused Plaintiffs to buy a deficient insurance policy.

An institutional defendant may be held vicariously liable for the alleged negligence of its agents and employees. *Est. of Swanzy by Swanzy v. Kryshak*, 336 Mich. App. 370, 384, 970 N.W.2d 407, 416 (2021), appeal denied sub nom. *Swanzy v. Kryshak*, 509 Mich. 889, 971 N.W.2d 206 (2022), reconsideration denied, 509 Mich. 1056, 975 N.W.2d 451 (2022).

"An employer is not vicariously liable for acts committed by its employees outside the scope of employment, because the employee is not acting for the employer or under the employer's control." *Rogers v. J.B. Hunt Transp., Inc*., 466 Mich. 645, 650–51, 649 N.W.2d 23, 26 (2002) For example, it is well established that an employee's negligence committed while on a "frolic or detour," or "after hours" is not imputed to the employer. *Id*. In addition, even where an employee is working, vicarious liability is not without its limits, "there is no liability on the part of an employer for torts intentionally or recklessly committed by an employee beyond the scope of his master's business." *Id*.

Hendrix gave Plaintiffs advice while procuring an insurance quote and acting undisputedly within the scope of his employment. It was not a frolic or detour, it was not after hours, and there is no allegation that Hendrix committed a tort intentionally or recklessly. Further, Defendants do not provide any argument in their motion that Hendrix's acts were outside the scope of his employment.

For these reasons, Defendants' Brown and Brown motion is **DENIED** with respect to Count IV.

## IV. Conclusion

Defendants' motion for summary judgment is **GRANTED** with respect to **Count I** and **DENIED** with respect to **Counts II-IV**.

Both parties' motions for leave to file supplemental briefing are **GRANTED**.

It is further ordered that:

1. The Court will hold a Final Pretrial Conference on **May 3, 2023, at 3:00 pm**

2. Motions in Limine and the Final Pretrial Order are due on **May 3, 2023.**

3. Trial is set to begin on **May 24, 2023, at 9:00 am.**

4.

**IT IS ORDERED**

Dated:  February 6, 2023                    /s/Gershwin A. Drain
                                            GERSHWIN A. DRAIN
                                            United States District Judge


## CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
February 6, 2023, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Deputy Clerk